Joseph P. CARONA

v.

FALCON SERVICES COMPANY,
INC. et al.

Civil Action No. G–99–205.

United States District Court,
S.D. Texas,
Galveston Division.

Sept. 21, 1999.

Francis I Spagnoletti, Spagnoletti & Assoc, Houston, TX, for plaintiff.

William B. Underwood, III, House Kingsmill et al, Houston, TX, Michael R. C. Riess, House Kingsmill et al, New Orleans, LA, for defendants.

## ORDER DENYING MOTION TO TRANSFER VENUE

KENT, District Judge.

This is a personal injury case arising under the Jones Act and general maritime law. Plaintiff was allegedly injured on June 5, 1996 while working aboard the "Blake 24", a barge workover rig situated in Terrebonne Parish, Louisiana. Now before the Court is Defendant's Motion to Transfer Venue of August 23, 1999. For the reasons set forth below, that Motion is **DENIED**.

Defendant seeks a transfer to the Eastern District of Louisiana based on 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Defendant bears the burden of demonstrating to the Court that it should transfer the case. *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir.1989) (requiring the defendant to make a showing that the forum sought is more convenient); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed").

Of course, whether to transfer the case rests within the sound discretion of the Court, and its determination is reviewed under an abuse of discretion standard. *See U.S. v. Hemmingson*, 157 F.3d 347, 356–57 (5th Cir.1998)("[V]enue and severance decisions are reviewed for abuse of discretion."); *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir.1988)("Decisions to effect a 1404 transfer are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse of that discretion." (citation omitted)); *Marbury–Pattillo Const. Co., Inc. v. Bayside Warehouse Co.*, 490 F.2d 155, 158 (5th Cir.1974) (declaring that whether to transfer venue is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion.).

### I. HISTORICAL BACKGROUND

To put Defendant's current Motion into proper perspective, the Court feels it would be beneficial to review the previous contacts this Court has had with Defendant. Since 1995, Defendant, or some related Falcon entity, has been named a defendant in 14 suits filed in this Court. In eight of these suits, Defendant did not move to transfer venue.[1] One suit was

---

**1.** *See Krewson v. Falcon Services Co. Inc.*, No. G–99–204 (S.D. Tex. filed Mar. 31, 1999); *Crow v. Falcon Services Co. Inc.*, No. G–98–477 (S.D. Tex. filed Sept. 17, 1998); *Dedeaux*

just recently filed, and Defendant has not to date moved to transfer venue.[2] However, in four suits, Defendant has strenuously urged this Court to transfer venue elsewhere.[3] All four of Defendant's motions were denied by the Court.

This Order is now the fifth time the Court has visited the venue transfer issue with the Defendant. The Court always strives to thoughtfully analyze venue transfer motions according to a long established analytical protocol, but given its historical setting with this Defendant it herein particularly strives to provide Defendant with a painstaking and thorough analysis of the venue transfer standard which prevails in this Court, with an eye towards minimizing avoidable delays and expenses from needless litigation of venue motions in the future. Notwithstanding, Defendant is invited to seek whatever appellate relief it feels entitled to, as is its unquestioned right. The Court, as always, stands ready to receive any guidance, suggestions, or instructions the Fifth Circuit sees fit to provide.

## II. ANALYSIS

■ The Court weighs the following factors when deciding whether a venue transfer is warranted: the availability and convenience of witnesses and parties, the location of counsel, the location of pertinent books and records, the cost of obtaining attendance of witnesses and other trial expenses, the place of the alleged wrong, the possibility of delay and prejudice if transfer is granted, and the plaintiff's

choice of forum, which is generally entitled to great deference. See, e.g., Henderson v. AT & T Corp., 918 F.Supp. 1059, 1065 (S.D.Tex.1996)(Kent, J.); Dupre v. Spanier Marine Corp., 810 F.Supp. 823, 825 (S.D.Tex.1993)(Kent, J.); Continental Airlines v. American Airlines, 805 F.Supp. 1392, 1395–96 (S.D.Tex.1992)(Kent, J.)(discussing the importance of the plaintiff's choice of forum in light of the policies underlying § 1404(a)).

### 1) Availability and Convenience of the Witnesses and Parties

■ Of the six factors weighed by the Court, this factor is probably the most important. See Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co., 844 F.Supp. 1163, 1166 (S.D.Tex.1994); Continental Airlines, 805 F.Supp. at 1396.

### A. Witnesses

■ Defendant argues that the location of the witnesses in this case favors transfer. In support, Defendant provides a cursory list of seven potential eyewitnesses to the injury on Rig 24. However, Defendant does not clearly indicate that these seven rig-hands actually witnessed anything relevant, nor does Defendant indicate a definite intention to call any of these potential eyewitnesses to testify at trial. As this Court has repeatedly stated, vague allegations about the convenience of the witnesses is insufficient to convince this Court that the convenience of the witnesses and the parties would best be served by transferring venue. See, e.g., Dupre, 810

v. Falcon Drilling Co., No. G–98–456 (S.D. Tex. filed Sept. 4, 1998); Luke v. Falcon Services Co., No. G–98–268 (S.D. Tex. filed May 27, 1998); Lewis v. Falcon Drilling Co., No. G–97–204 (S.D. Tex. filed April 14, 1997); Hall v. Newfield Exploration, No. G–97–158 (S.D. Tex. filed Mar. 14, 1997); Green v. Falcon Drilling Co., No. G–96–610 (S.D. Tex. filed Oct. 26, 1996); Glover v. Falcon Drilling Co., No. G–95–419 (S.D. Tex. filed July 12, 1995).

2. See Morton v. R & B Falcon Drilling Co., No. G–99–446 (S.D. Tex. filed July 26, 1999).

3. See Hoffpauir v. Falcon Services Co., No. G–98–484 (S.D. Tex. filed Sept. 21, 1998); Brunet v. Falcon Services Co., No. G–98–324 (S.D. Tex. filed June 29, 1998); Daniels v. Falcon Drilling Co., No. G–97–690 (S.D. Tex. filed Dec. 10, 1997); Jiminez v. Gulf Star Holdings, No. G–95–385 (S.D. Tex. filed June 29, 1995). Indeed, in Brunet, Defendant sought mandamus review of this Court's denial of Defendant's Motion to Transfer Venue. Defendant abandoned its efforts to obtain mandamus review when the plaintiff agreed to transfer venue to Louisiana.

F.Supp. at 823 (to support a transfer of venue, the moving party cannot merely allege that certain key witnesses are not available or are inconveniently located, but must specifically identify the key witnesses and outline the substance of their testimony).

Moreover, only one of these seven potential eyewitnesses resides in Louisiana; the other six are residents of Mississippi. If Defendant were seeking to transfer venue to Mississippi, the Court would understand why it might be more convenient for Mississippi residents to testify in a Mississippi court. But since Defendant does not seek a transfer to Mississippi, the Court is not persuaded that the Southern District of Texas is significantly less convenient than the Eastern District of Louisiana. Defendant's witnesses will only be asked to travel to a neighboring state, as indeed six of seven would even if the case *were* transferred, "it is not as if the key witnesses will be asked to travel to the wilds of Alaska or the furthest reaches on the Continental United States." *Continental Airlines,* 805 F.Supp. at 1397. A transfer predicated on the convenience of witnesses must actually *be* more convenient for those witnesses.

■ Even if the Court assumes it were marginally more convenient for Mississippi residents to testify in the Eastern District of Louisiana rather than the Southern District of Texas, it appears that all seven of these potential eyewitnesses are current employees of the Defendant. As this Court has noted on innumerable occasions before, if key witnesses are employees of the party seeking transfer, "their convenience is entitled to less weight because that party will be able to compel their testimony at trial." *Id.* Additionally, the Court "vigorously exercises its authority under Fed.R.Evid. 403 and 611(a) to ensure that each witness's testimony is as concise as possible and that cumulative and redundant testimony is kept to a minimum" thereby keeping the time that the witnesses are absent from their jobs to an "absolute minimum." *Id.*

Defendant also lists five of Plaintiff's original treating physicians who could potentially be called to testify at trial. However, only one is a resident of Louisiana; the other four are residents of Mississippi. As previously explained, the Court is not persuaded that it would be significantly more convenient for Mississippi physicians to testify in the Eastern District of Louisiana rather than the Southern District of Texas.

In contrast, Plaintiff unambiguously indicates his intention to offer the testimony of two key witnesses, both of whom reside within the Southern District of Texas. Dr. Donovan, Plaintiff's current orthopedic surgeon, is expected to testify regarding Plaintiff's current medical condition and prospects for future recovery. Dr. McCoin, an economist, is expected to testify regarding the economic losses Plaintiff has allegedly sustained as the result of Defendant's conduct.

### B. Parties

When determining the relative conveniences of transfer, the Court also considers the residence of the parties in the case. The parties agree that Plaintiff is a resident of Mississippi. On the other hand, the citizenship of the various Falcon entities is disputed. In his Amended Complaint, Plaintiff named six Falcon entities as defendants: R & B Falcon Corp., R & B Falcon Drilling Co., Falcon Services Co. Inc., R & B Falcon Inland, Inc., R & B Falcon Drilling USA, Inc., and R & B Falcon Holdings, Inc. Despite the fact that Defendant bears the burden of persuasion in convincing the Court that a transfer to Louisiana is warranted, Defendant fails to provide the Court with adequate information regarding its corporate structure and the citizenship of its various entities.

The Court is nevertheless aware that Defendant has earlier conceded that the overall parent corporation, R & B Falcon Corp., has its principal place of business

within the Southern District of Texas.[4] Defendant has also conceded that R & B Falcon Drilling Co. has its principle place of business within this District.[5] Obviously, neither fact supports Defendant's motion to transfer.

The Court is deeply troubled by the representations Defendant has made as to the status of Plaintiff's employer, Falcon Services Company, Inc. In *Brunet v. Falcon Services Inc.*, an unrelated case filed in this Court in which the Defendant felt so strongly about venue relief as to seek mandamus, Defendant submitted an affidavit, dated May 10, 1999, in support of its Motion to Transfer Venue from this Court to the Eastern District of Louisiana.[6] In the *Brunet* affidavit, Mr. Lloyd Pellegrin, Vice–President of Administration for Falcon Services Company, Inc., swore that Falcon Services Company, Inc. had its principle place of business in Houma, Louisiana.

However, in support of its Motion to Transfer Venue in the present case, Defendant, perhaps inadvertently, submitted to this Court a copy of an affidavit dated Nov. 21, 1997 in which Mr. Pellegrin swore that Falcon Services Company, Inc. had *Houston* as its principle place of business. That affidavit was originally submitted to the Mississippi state court in which Plaintiff first sued Defendant. Defendant fails to explain the glaring inconsistency between the *Brunet* affidavit and the Mississippi affidavit.[7] Plaintiff has moved for sanctions regarding such sworn inconsistency, but whether Defendant's conduct merits sanctions pursuant to Fed. R. Civ. 11 will be addressed at another time. For

the moment, it is clear to the Court that Defendant's inconsistent representations as to the status of Falcon Services Company, Inc. cannot possibly support Defendant's Motion to Transfer Venue.

Plaintiff has also named R & B Falcon Holdings, Inc. as one of the defendants in this case. In its motion before the Court, Defendant fails to offer much information about R & B Falcon Holdings, Inc. Nevertheless, the Court has managed to unearth, through pleadings in this and other cases, the following facts. Prior to December, 1998, R & B Falcon Holdings, Inc. was known as "R & B Falcon Drilling (U.S.), Inc." Prior to January of 1998, R & B Falcon Drilling (U.S.), Inc. was in turn known as "Falcon Drilling Company, Inc." The relevance of these name changes is that Falcon Drilling Company, Inc., as a *plaintiff*, at least once chose the Southern District of Texas as a suitable forum to litigate its claims.[8] All other things being equal, the Court casts a jaundiced eye on a party who finds the Southern District of Texas convenient for bringing its own claims as a plaintiff, but inconvenient for defending claims as a defendant. *See Carlile v. Continental Airlines, Inc.*, 953 F.Supp. 169, 171 (S.D.Tex.1997) (denying motion to transfer venue where defendant had earlier appeared in same forum as plaintiff). The Court is not familiar with the facts of the earlier case, so perhaps all things are not here equal. The Court simply notes that these facts, coupled with Defendant's failure to adequately account for the citizenship of R & B Falcon Holdings, Inc., certainly do not support transfer.

---

**4.** *See Crow v. Falcon Services Co.*, No. 98–477 (S.D. Tex. filed Sept. 17, 1998) (admitting Houston as the corporation's principal place of business).

**5.** *Id.* (admitting Houston as the corporation's principal place of business).

**6.** *See Brunet v. Falcon Services Co.*, No. G–98–324 (S.D. Tex. filed June 29, 1998).

**7.** Whether or not Falcon Services Company has its principle place of business within the Southern District of Texas, it is certainly clear that this corporation does business within the state of Texas. Defendant has conceded as much in a previous case before this Court. *See Crow v. Falcon Services Co.*, No. G–98–477 (S.D. Tex. filed Sept. 17, 1998).

**8.** *See Falcon Drilling Co., Inc., v. Lee*, No. H–95–04462 (S.D. Tex. filed Sept. 12, 1995 in the Houston Division).

The status of the remaining two named defendants, R & B Falcon Inland, and R & B Falcon Drilling USA, Inc. is unclear. Considering the information that Defendant has provided, or failed to provide, with respect to the six Falcon entities, the Court finds that Defendant has not demonstrated, as it must, that these circumstances point towards the Eastern District of Louisiana as a more convenient forum.

### 2) *Location of Counsel*

Although this factor is entitled to the least consideration, the Court notes that it does "give some weight to location of counsel if Plaintiff chooses local counsel to bring the suit." *Dupre*, 810 F.Supp. at 826. (recognizing that the vast majority of cases hold that location of counsel is entitled to little or no consideration). Plaintiff's counsel in this case offices within the Galveston Division. Defense counsel maintains offices in Houston, although the two chief attorneys for Defendant reside in New Orleans. These facts do not support a transfer to the Eastern District of Louisiana. This Court "will never take the location of counsel into its deliberations if the transfer only serves the convenience of the moving party's counsel and inconveniences the non-moving party's counsel." *Id.*

### 3) *Location of Books and Records*

In a personal injury action, the Court gives this factor less weight in its deliberations. *See id.* at 826–27 (noting that a personal injury action is typically not the type of action where the location of books and records is of paramount importance, and stating "the liability question is usually proven through eye witnesses rather than documents and the damages issue . . . usually does not involve enough documents as to be an overwhelming factor"); *Continental Airlines*, 805 F.Supp. at 1397 (observing in a personal injury case that "it is unlikely that all . . . relevant documents will be needed for trial and . . . [could] be produced and examined anywhere for discovery purposes").

Plaintiff suggests that payroll records and maintenance and cure records are probably located within this District since Falcon Services Company Inc. is headquartered in Houston. Defendant on the other hand simply fails to address this factor. Although the Court gives this factor little weight in this personal injury case, on these facts Defendant has clearly failed to carry its burden of persuasion.

### 4) *Trial Expenses*

It is rare that the forum in which the case is litigated is the most convenient or the least costly for all parties involved. Although the burden rests with Defendant, it proffers no information regarding the expenses and costs associated with the trial of this case in Galveston *vis-a-vis* Louisiana.

### 5) *Place of the Alleged Wrong*

The Court generally considers the place of the alleged wrong to be a very important factor in venue determination. *See Henderson*, 918 F.Supp. at 1067 (observing that suits by nonresidents can work to delay the trials of resident plaintiffs). However, "this factor, like the other factors, is only part of the equation." *Dupre*, 810 F.Supp. at 827. In this case, Plaintiff was injured in Terrebonne Parish, Louisiana. However, although Plaintiff's injury did not occur in this District, the Court finds that because of the maritime nature of Defendant's business and Defendant's contacts with the Southern District of Texas, the residents of this District certainly have more than a passing interest in the outcome of this litigation and the safety of Defendant's operations. *Cf. Continental Airlines*, 805 F.Supp. at 1399 ("Plaintiffs alleged Defendants engaged in . . . violation of the . . . law; to the extent residents in the Galveston Division suffered from these actions . . . it cannot be said that they have no interest in the outcome of this litigation").

6) *Possibility of Delay and Plaintiff's Choice of Forum*

▆ A plaintiff's choice to litigate his case in the Galveston Division of the Southern District is normally given great deference. *See Peteet*, 868 F.2d at 1436; *Carlile*, 953 F.Supp. at 171; *see also United Sonics, Inc. v. Shock*, 661 F.Supp. 681, 683 (W.D.Tex.1986)(asserting that plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor"). Of course, close scrutiny is given to Plaintiff's choice of forum when the Plaintiff does not live in the Southern District. *See, e.g., Dupre*, 810 F.Supp. at 828 (explaining that while it is the "Court's consistent practice to honor a plaintiff's choice of forum where factually justified" the Court is also "loathe to respect those choices that appear to be blatant attempts at forum shopping with little or no factual justification"). Here, Plaintiff lives in Mississippi.

Plaintiff originally sued Defendant in a Mississippi state court. Defendant moved to dismiss that action, based on a lack of personal jurisdiction or in the alternative *forum non conveniens*. Although that motion is still pending, the parties expect the Mississippi state case will soon be dismissed. The fact that Plaintiff first sought redress in the state of his residence, and then sought redress in the Southern District of Texas where Defendant is apparently headquartered, does not appear to this Court to amount to blatant forum shopping.

Plaintiff validly complains that a transfer of venue to Louisiana may well result in Plaintiff losing the benefit of this Court's expeditious and cost-efficient manner of handling cases, including this Court's shorter trial track, which is well below the average of other courts in the area. *See Id.* at 827. (a prompt trial "is not without relevance to the convenience of parties and witnesses and the interest of justice").

In response, Defendant argues that Plaintiff is unlikely to experience delay because, as Defendant boldly puts it, the Eastern District of Louisiana is "overburdened with judges." This Court remains unconvinced that Plaintiff will suffer little delay as a result of transferring this case to the Eastern District of Louisiana. On the other hand, the Court is quite certain no such delay will occur here. The Court has much experience with these types of cases, handling literally hundreds of such cases in an expeditious manner in the past. This case was filed on March 31, 1999, a scheduling conference was held August 5, 1999, and an absolutely firm trial date has been set for February 14, 2000.

### III. CONCLUSION

▆ After careful consideration of the relevant factors in light of the facts in this case, the Court concludes that the Defendant has failed to carry its burden of demonstrating that a transfer is necessary to serve the interests of justice or the convenience of the witnesses and parties. Thus the Court declines to disturb the forum chosen by Plaintiff and introduce the likelihood of delay inherent in any transfer simply to avoid the insignificant inconvenience that the Defendant may suffer by litigating this matter in Galveston rather than Louisiana. The Court realizes that Plaintiff is not a resident of the Galveston District, but for whatever reason, he has chosen to file his suit here and the Court finds, given the totality of the circumstances, no factors outweigh this choice.

Thus, for the reasons stated above, Defendant's Motion to Transfer Venue is hereby **DENIED**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

Finally, the Court notes that Defendant has yet to file an Answer to Plaintiff's First Amended Complaint filed June 4, 1999. This Court has now twice granted Defendant additional time in which to prepare an Answer. The original deadline was first extended to August 16, 1999, and then subsequently extended to August 23, 1999. As of September 21, 1999, Defendant has still not filed an Answer. Defendant is **ORDERED** to file an answer within 10 days from the issuance of this Order Denying Motion to Transfer Venue. If Defendant still fails to answer, Plaintiff is invited to move for default judgement, which will be granted.

**IT IS SO ORDERED.**